IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION



SANDRA FAY GIPSON, as Administratrix of,
and Personal Representative on Behalf of the
Wrongful Death Beneficiaries of the Estate of
CHARLES ELLIOTT McGREW, Deceased                         **PLAINTIFF**

V.                                              CIVIL ACTION NO. 3:16-cv-624 DPJ-FKB

MANAGEMENT & TRAINING CORPORATION
and JOHN AND JANE DOES 1-100                              **DEFENDANTS**

## COMPLAINT

### *Jury Trial Demanded*

1. This Complaint is brought by Sandra Fay Gipson (hereinafter, "Plaintiff"), Individually and as Personal Representative on behalf of the wrongful death beneficiaries of Charles Elliott McGrew (hereinafter, "Decedent"), by and through undersigned counsel, against Management & Training Corporation (hereinafter, "Defendant") and John and Jane Does 1-100.

### JURISDICTION AND VENUE

2. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1332 and 1343, as well as 42 U.S.C. § 1983. Subject matter jurisdiction is also appropriate in federal court since a federal question is raised pursuant to the 8th and 14th Amendments to the United States Constitution, and as Plaintiff and Defendant are citizens of different states and the claim in question is in excess of $75,000.00. The Court also has pendent jurisdiction over the Plaintiff's State causes of action.

3. Venue is appropriate in this Court under § 1391(b) and § 1392, as all acts and/or omissions occurred in Lauderdale County, Mississippi, which is located within the Southern District of the United States District Court, Northern Division.

## PARTIES

4.     Plaintiff, Sandra Fay Gipson, is an adult resident citizen of Hancock County, Mississippi. Her current residence is 3630 Firetower Road, Kiln, Mississippi 39556. Plaintiff, the former spouse of the Decedent, brings this action individually and on behalf of the surviving heirs/wrongful death beneficiaries of Decedent: Tiffanie Dawn McGrew, his natural daughter, whose residence address is 1950 Possum Hollow Road, Slidell, Louisiana 70458; Whitney Nicole McGrew, his natural daughter, whose residence address is 6413 Emerson Gardens Street, Las Vegas, Nevada 89166; his legally adopted daughter, Candace Renee McGrew-Seeley, whose residence address is 6904 April Wind Avenue, Las Vegas, Nevada 89131; his adopted daughter, Abbie L. Manary, whose residence address is 19502 Henry Harley Road, Saucier, Mississippi 39574; his adopted daughter, Theresa D. Ford, whose residence address is 21367 Darling Road, Pass Christian, Mississippi 39571[1]; and his spouse, Peggy McGrew, whose residence address is 200 47th Street, Gulfport, Mississippi 39507.[2]

5.     Decedent was, at all times material to this Complaint, an adult incarcerated at the East Mississippi Correctional Facility (hereinafter, "EMCF"), located in Meridian, Lauderdale County, Mississippi. Substantial acts, omissions, and events that caused the Decedent's death took place in Lauderdale County, Mississippi. At the time of the incident which gives rise to this Complaint, Decedent was a seventy-one (71) year old citizen of the State of Mississippi, and a prisoner incarcerated at EEMCF. Plaintiff, as Personal Representative, brings this action

---

[1]    Upon information and believe, Plaintiff has cause to believe that the Decedent had two (2) other adopted daughters from a previous marriage, Abbie L. Manary, and Theresa D. Ford. Plaintiff is unaware if said adoptions were legal.

[2]    Decedent was involved in divorce proceedings with his wife, Peggy McGrew, at the time of his death; said matter was originally filed in the Chancery Court of Harrison County, Mississippi, Cause No. 21CH1:11-cv-01698(3) with divorce granted July 18, 2014, nunc pro tunc to November 22, 2013. It was appealed to the Mississippi Court of Appeals, Case No. 2014-CA-01148-COA, who reversed and rendered the Chancery Court's prior judgment of divorce on December 15, 2015.

pursuant to Mississippi Code Ann. § 11-7-13 (1972), the Wrongful Death Statute.

6. Defendant, Management & Training Corporation (hereinafter, "MTC"), a national for-profit prison operator incorporated and existing in the State of Utah, is under contract with the Mississippi Department of Corrections, ("MDOC") for the management and oversight of the prison's daily operations, under which it has the responsibility for providing humane care and treatment consistent with all constitutional and ACA standards. MTC's 5,545 employee Corrections division operates twenty-four (24) correctional facilities throughout the United States, having seventeen (17) contracts with state correctional departments and seven (7) with federal correctional agencies. MTC's principal place of business is located at 500 North Marketplace Drive, Centerville, Utah 84014, and is subject to the in personam jurisdiction of the Court by service of process upon its appointed registered agent, CT Corporation System, located at 645 Lakeland East Drive, Suite 101, Flowood, Rankin County, Mississippi 39232.

7. Plaintiff is ignorant as to the identities of Defendant John and Jane Does 1-100 (hereinafter, "Doe Defendants") who are unknown officers, employees, agents, and/or servants of MTC. Plaintiff will amend this Complaint to allege their true names and allege that each of the fictitiously named Doe Defendants are responsible in some manner for the occurrences herein alleged, and that Decedent' damages, as alleged herein, were proximately caused by their conduct. Plaintiff, upon information and belief, asserts that the Doe Defendants were the officers, agents, servants, and employees of the Defendants herein, and were at all times acting under color of law with the permission and consent of Defendant within the course and scope of their employment.

## **FACTS**

8.     During the morning hours of June 10, 2014, Brian Bullock, an inmate at EMCF, strangled and killed the Decedent, his cellmate, while in their cell, 4D-106. He staged it to appear as a suicide.

9.     Decedent was housed in Unit, 4D, which was known to house older offenders and was considered as one of the safer areas of the facility. Bullock, serving a sentence for robbery, had only recently been reassigned as his cellmate, after making a request to officials to be placed in protective custody. Bullock, previously incarcerated at Walnut Grove, had previously become indebted to the Vice Lords in the amount of $250.00. He was unable to repay the debt, and as a result was given one (1) alternative: either kill a member of a rival gang for them, or be killed, himself. Unable to go through with it, he advised MTC prison officials of the situation and was moved to EMCF.

10.     Unfortunately, the gang network extends far beyond facility walls. Bullock was greeted by members of the Vice Lords upon his arrival at EMCF; they quickly advised him that his options remained the same. He again called his father, who would not provide him with the funds to repay the debt, and Bullock instead contacted prison officials to notify them of the continuing problem, requesting that he be placed once more on protective custody. He was moved to 4D with the Decedent.

11.     The move was unsuccessful, however. Soon after his arrival in 4D, he was approached by "Moody", a Vice Lord member who claimed to be owed an outstanding debt by his new cellmate. Moody ordered that Bullock collect this debt for him; however, when Bullock approached the Decedent about the purported debt, he refused. Bullock returned to Moody to advise him of Decedent's refusal, who gave him two (2) options: kill the Decedent, or be killed.

12. Fearful for his own life, Bullock returned to his cell. He made a makeshift rope from a piece of torn bedsheet, and at approximately 9 a.m. he strangled the Decedent. Sometime thereafter he left the cell. Decedent was not discovered until approximately 1:05 p.m., when officers went to the cell to take the Decedent for a scheduled echocardiogram.

13. Initially, the death was considered to be a suicide; however, investigators quickly realized that was not the case as they interviewed Bullock and other inmates. Bullock quickly confessed to the murder, providing a detailed narrative of the sequence of events. He was charged with murder, and ultimately pled guilty to second degree murder.

14. The Decedent's family was led to believe that the cause of death was a suicide. It was not until months later that they learned, almost by accident, that the Decedent was, in fact, killed.

## 1983 CAUSES OF ACTION

15. Plaintiff incorporates all allegations set forth in Paragraphs 1 through 14 hereinabove.

16. The Defendant's employees knew or should have known that Bullock posed a threat to the Decedent on June 10, 2014. MTC officials knew that Bullock had been coerced by gang members to kill his cell mate at two (2) locations. Instead of placing Bullock in "protective custody by himself, MTC placed him with the Decedent, a vulnerable, older inmate. The factual allegations alleged herein show that Defendants MTC and Doe Defendants violated clearly established constitutional rights, including but not limited to:

a) Cruel and unusual punishment under the Eighth and Fourteenth Amendments;

b) Decedent's right not to be deprived of liberty without due process of law;

c) Decedent's right to be safe and protected from injuries while in Defendant's custody; and

d) Decedent's right to be protected by the correctional officers while under their control.

17. Doe Defendant's actions clearly were not objectively reasonable. At all times, the Doe Defendants were acting under color of state law.

18. As a direct and foreseeable result of the Doe Defendant's actions, Plaintiff suffered damage including, but not limited to, physical injuries, emotional distress, mental anguish, as well as pain and suffering.

19. Defendant MTC, by and through Doe Defendants in their individual and official capacities, established customs, policies and procedures which directly and proximately caused the deprivation of the Decedent's constitutional rights as alleged herein. Defendants were deliberately indifferent to the safety of the Decedent and other EMCF inmates. These policies created unconstitutional conditions of confinement.

20. Such unwritten policies, customs and practices include but are not limited to the following:

    a. inadequate and improper training, hiring, supervision and discipline of EMCF officers;

    b. failing to institute proper gang management policies and procedures;

    c. failing to prevent and/or investigate threats of violence made against inmates by other inmates which are reported to EMCF officials;

    d. failing to establish policies and procedures to limit the flow of illegal contraband into the facility, including but not limited to drugs, weapons, and cell phones, all of which contributed to the atmosphere of violence at EMCF;

  e.  failure to make proper rounds/cell checks within the established guidelines to ensure inmates' safety; and

  f.  improper classification of inmates.

## EPISODIC ACTS OR OMISSION

21. Plaintiff incorporates all allegations set forth in Paragraphs 1 through 20 hereinabove.

22. The Due Process Clause of the Eighth Amendment requires the Defendant to provide convicted inmates with basic human needs, including protection from harm, during their confinement. The Defendant and Doe Defendants had subjective knowledge of the substantial and serious threat that Bullock's life had been threatened in the event he chose not to act upon the gang's mandate, yet the Defendants nevertheless disregarded the risk of violence to anyone by responding to it with deliberate indifference. Specifically, MTC placed Bullock in Decedent's cell. Decedent was a vulnerable older inmate. The Defendants and their employees clearly breached this duty and as a result, the Decedent was killed.

23. Defendants' failure to properly investigate and respond to the warning provided by Bullock directly caused Decedent's death. In doing so, Defendants' violated clearly established constitutional rights, including but not limited to:

  a)  Cruel and unusual punishment under the Eighth and Fourteenth Amendments;

  b)  Decedent's right not to be deprived of liberty without due process of law; and

  c)  Decedent's right to be safe and protected from injury while in Defendants' custody.

24. By their failure to provide the Decedent with safe harbor while under their confinement, Defendants' actions deprived him of the rights secured for him by the United States Constitution under the Eighth and Fourteenth Amendments and federal law.

25. As a direct and foreseeable result of Defendants' actions, Plaintiff has suffered damage including, but not limited to, emotional distress, mental anguish, as well as pain and suffering.

### NEGLIGENCE/GROSS NEGLIGENCE

26. Plaintiff incorporates all allegations set forth in Paragraphs 1 through 25 hereinabove.

27. At all times relevant herein, Defendants and Doe Defendants, as their employees, had a duty to exercise ordinary care for the inmates at EMCF, including the Decedent. Defendants and Doe Defendants breached that duty, by failing to use the ordinary care that a reasonable person would use to avoid and prevent injury to others, i.e. in the case *sub judice,* by failing to act appropriately based upon the prior awareness of Bullock's propensity to harm other inmate(s) per advisement to officials by both Bullock and his father of the threats levied against him- the failure of which led directly to the incontrovertible permanent damage sustained by the Plaintiff. This breach was so egregious as to amount to gross negligence.

28. Defendants and its employees were also negligent by failing to monitor Decedent's cell on a routine basis. Had MTC's employees performed routine head counts they would have discovered Decedent in enough time to render medical assistance to him.

29. The death of Charles Elliott McGrew was the reasonably foreseeable outcome of Defendants and Doe Defendants' acts and omissions. These acts and/or omissions were substantial factors in causing his death, and the accompanying damages suffered by the Plaintiff.

### NEGLIGENT HIRING AND SUPERVISION

30. Plaintiff incorporates all allegations set forth in Paragraphs 1 through 29 hereinabove.

31. Plaintiff alleges Defendant MTC negligently hired, supervised, and retained its

employees and agents, inter alia, by 1) failing to properly care for and ensure the Decedent's health, safety and well-being while incarcerated at EMCF; b) failing to properly train, supervise, discipline, retain, hire and/or discharge its employees, agents, and/or representatives; and c) was otherwise negligent in its care and treatment of the Decedent, and as a direct and proximate result, the Plaintiff sustained the harms alleged herein.

## RESPONDEAT SUPERIOR/VICARIOUS LIABILITY

32.   Plaintiff incorporates all allegations set forth in Paragraphs 1 through 31 hereinabove.

33.   Defendant and Doe Defendants acted with negligence, gross negligence, and/or intentionally by allowing or failing to prevent Decedent's death.  At all times relevant, each Defendant owed a duty to the Decedent to ensure his health, safety and well-being, and the Defendants breached this duty.  The actions and inactions of Defendant and/or Doe Defendants led directly to the death of Charles Elliott McGrew.  MTC, as Doe Defendant's employers, are liable for their actions which were undertaken during the course and scope of their employment.

## PUNITIVE DAMAGES

34.   The Plaintiff incorporates all allegations set forth in Paragraphs 1 through 33 hereinabove.

35.   MTC and Doe Defendants, in their individual capacities, acted in complete disregard for the safety of the Decedent by acting in a negligent and/or grossly negligent manner as previously described herein.  The actions of these Defendants warrant punitive damages.

36.   The Defendants' actions in their individual capacities exhibited gross negligence and direct disregard of the safety of the Decedent.  Punitive damages should be awarded against the Defendants.  Defendants' tortious actions caused the wrongful death of the Decedent, and therefore, Plaintiff's emotional distress and mental anguish.

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, the Plaintiff requests that upon a jury trial of this cause, the Court will award all relief due Plaintiff as set forth herein, including but not limited to the following:

A. Compensatory damages of, from and against the Defendants, each and severally, in amount to be determined by this Court;

B. Punitive damages of, from and against the Defendants, in an amount to be determined by this Court;

C. Reasonable attorney's fees and all costs of this court;

D. Pre and post judgment interest; and

E. Such other general and special relief as appears reasonable and just in this cause.

RESPECTFULLY SUBMITTED, THIS the 11th day of August, 2016.

SANDRA FAY GIPSON, PLAINTIFF

BY: _____
CHARLES R. MULLINS

OF COUNSEL:

CHARLES R. MULLINS (MB# 9821)
MERRIDA (BUDDY) COXWELL (MB# 7782)
COXWELL & ASSOCIATES, PLLC
Post Office Box 1337
Jackson, Mississippi 39215-1337
Telephone: (601) 948-1600
Facsimile: (601) 948-1600
chuckm@coxwelllaw.com
merridac@coxwelllaw.com
*Attorneys for Plaintiff*