IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

| | | |
|---|---|---|
| SANDRA FAY GIPSON, as Administratrix, and Personal Representative on Behalf of the Wrongful Death Beneficiaries of the Estate of CHARLES ELLIOT McGREW, Deceased<br>*Plaintiff* | )<br>)<br>)<br>)<br>)<br>)<br>) | |
| vs. | ) | Civil Action No. 3:16-cv-624-DPJ-FKB |
| MANAGEMENT & TRAINING CORPORATION and JOHN and JANE DOES 1-100,<br>*Defendants* | )<br>)<br>)<br>)<br>) | |

**MEMORANDUM OF AUTHORITIES
SUPPORTING MOTION FOR SUMMARY JDUGMENT**

**COMES NOW** Defendant Management & Training Corporation ("MTC"), through counsel and pursuant to the Federal Rules of Civil Procedure, and moves this Court for an Order granting summary judgment. In support, MTC would show the following.

**INTRODUCTION**

This prisoner civil rights claim is premised on the false allegations that MTC could have taken steps to prevent the murder of Elliot McGrew by his cellmate, Brian Bullock. The record evidence, adduced throughout the discovery process, demonstrates that Plaintiff cannot establish any unconstitutional policy or custom on the part of MTC which was the proximate cause of McGrew's death. Accordingly, Plaintiff's § 1983 claims fail as a matter of law.

An apparently lifelong sexual predator with a penchant for assaulting every child with whom he came into close proximity, Charles "Elliot" McGrew was murdered in his prison cell at East Mississippi Correctional Facility while serving a 13-year sentence for the rape and

molestation of his third wife's minor granddaughter. By almost all accounts – other than the obvious mental deformity which led him to prison – McGrew was a charming, charismatic person. His family loved him despite his crimes. Even his murderer, in his written confession, expressed warm feelings toward him.

McGrew was not a problem prisoner at EMCF. He had no disciplinary record, nor was there any reason to believe that he was involved with any violent gang. His cellmate on June 10, 2014, however, was quite the opposite. Brian Karl Bullock was transferred to EMCF and ultimately placed in Unit 4D**.** Bullock was serving a 10 year sentence after a conviction of robbery in Lauderdale County, Mississippi. Bullock was involved in gang activity before going to prison, and he maintained those activities while in custody. Bullock was a Latin King, a part of the "red team" of gangs which allied with its larger affiliate, the Vice Lords. It is unclear and immaterial how he came into the debt of the Vice Lords, but the record evidence demonstrates that Bullock owed a $250.00 debt to the gang.

Bullock testified that the Vice Lords were extorting him into committing illicit acts based upon his failure to repay the $250.00 he owed. However, neither MTC nor the Mississippi Department of Corrections has any record of Bullock seeking protective custody while at EMCF. Although he was on protective custody before coming to EMCF, Plaintiff has produced no evidence to support the idea that MTC was on notice that Bullock was in danger at EMCF, and certainly not that McGrew was in danger at the hands of Bullock. Bullock never made any threats against McGrew, and he never gave any indication before his murder confession that he had any intent to harm McGrew.

Because Plaintiff can present no competent evidence that MTC had in place an unconstitutional policy or custom which caused the death of Elliot McGrew, her federal claims

fail as a matter of law.  Likewise, discovery has concluded, and Plaintiff has not demonstrated any MTC employee who acted negligently in not preventing Bullock from murdering his cellmate in his cell.  For those reasons, Plaintiff's state law claims should be dismissed with prejudice.

**STATEMENT OF UNDISPUTED FACTS RELIED UPON IN SUPPORT OF MOTION**

a. **Allegations of the Complaint**

- Sandra Fay Gipson brings this wrongful death action as the personal representative of the Estate of Charles Elliott McGrew.[1]  Currently, there is a dispute between the putative heirs and/or wrongful death beneficiaries about whom is entitled to bring this action, but that dispute is immaterial to this Motion.

- At the time of his death, McGrew was incarcerated at East Mississippi Correctional Facility ("EMCF").[2]  At all times relevant to this civil action, MTC operated EMCF.[3]

- On the morning of June 10, 2014, Brian Bullock murdered McGrew in his cell by strangulation.[4]  Bullock was McGrew's cellmate, and he staged the event to appear like a suicide or natural causes.[5]

- Plaintiff alleges that Bullock was under threat from members of the Vice Lords and that he sought protection from prison officials from the Vice Lords.[6]  Bullock allegedly requested to be placed in protective custody and was moved to Unit 4D into McGrew's cell.  Bullock fashioned a rope from a torn piece of bedsheet on the morning of June 10, 2014 and strangled McGrew.

- Plaintiff alleges that MTC employees, "knew or should have known that Bullock posed a threat to [McGrew] on June 10, 2014."[7]  In addition, "MTC officials knew that Bullock had been coerced by gang members to kill his cell mate at two (2) locations.  Instead of placing Bullock in 'protective custody' by himself, MTC placed him with the Decedent, a vulnerable, older inmate."[8]

---

[1] [Doc. 1] at ¶ 1.
[2] [Doc. 1] at ¶ 5.
[3] [Doc. 1] at ¶ 6.
[4] [Doc. 1] at ¶ 8.
[5] [Doc. 1] at ¶ 8.
[6] [Doc. 1] at ¶ 10.
[7] [Doc. 1] at ¶ 16.
[8] [Doc. 1] at ¶ 16.

*48068117-1*  3

- According to the Plaintiff, these allegations constituted "[c]ruel and unusual punishment under the Eighth and Fourteenth Amendments" and violation of other rights under the U.S. Constitution.[9]

- Plaintiff alleges that, "MTC, by and through Doe Defendants in their individual and official capacities, established customs, policies, and procedures which directly and proximately caused the deprivation of the Decedent's constitutional rights…"[10]

- Plaintiff's claims are premised upon "unwritten policies, customs, and practices [which] include but are not limited to: a. Inadequate and improper training, hiring, supervision and discipline of EMCF officer; b. Failing to institute proper gang management policies and procedures; c. Failing to prevent and/or investigate threats of violence made against inmates by other inmates which are reported to EMCF officials; d. Failing to establish policies and procedures to limit the flow of illegal contraband into the facility, including but not limited to drugs, weapons, and cell phones, all of which contributed to the atmosphere of violence at EMCF; e. Failure to make proper rounds/cell checks within the established guidelines to ensure inmates' safety; and f. Improper classification of inmates."[11]

- In addition to the constitutional claims, Plaintiff alleges claims of negligence/gross negligence,[12] negligent hiring and supervision,[13] and respondeat superior/vicarious liability.[14] Plaintiff also alleges a separate count of "punitive damages," alleging that "MTC and Doe Defendants, in their individual capacities, acted in complete disregard for the safety of the Decedent by acting in a negligent and/or grossly negligent manner…"[15]

**b.    MTC's Policies and Procedures**

- MTC has no control over inmate classifications.[16] It also has no control over which inmates it houses.[17] All of those decisions are made solely by the Mississippi Department of Corrections.[18]

- EMCF has been designated by the Mississippi Department of Corrections as a unit to serve mentally ill offenders.[19] A sizeable number of EMCF's population has some form of mental illness.[20]

---

[9] [Doc. 1] at ¶ 16.
[10] [Doc. 1] at ¶ 19.
[11] [Doc. 1] at ¶ 20.
[12] [Doc. 1] at ¶¶ 26-29.
[13] [Doc. 1] at ¶¶ 30-31.
[14] [Doc. 1] at ¶¶ 32-33.
[15] [Doc. 1] at ¶ 35.
[16] **Exhibit "A"** at 82:15-19.
[17] **Exhibit "A"** at 61:17-21.
[18] **Exhibit "A"** at 93:19-21.
[19] **Exhibit "A"** at 6:9-16.
[20] **Exhibit "A"** at 6:9-16.

- The unit on which McGrew and Bullock served, Unit 4, was not a unit designated for mentally ill patients or for sick patients. It was a general population unit.

- EMCF has no official protective custody units. When an offender requests protective custody at EMCF and MTC and/or MDOC verifies that there is a need to separate the offender from the general population, that offender is placed in a separate unit, Unit 6.[21] Former MTC Correctional Captain Matthew Naidow testified that Unit 6 D was, "basically our detention unit, detention and administrative segregation."[22]

b. **Brian Bullock**

- Brian Bullock was a troubled youth, who began affiliating with the Latin Kings gang since he was 13 years old.[23] Bullock's father, Ronald Bullock testified that from the time Bullock was around 15 years old, he began having trouble with the law.[24] Bullock told his father that he began doing drugs at 13.[25] Ultimately, Bullock was incarcerated for robbing the Hot Spot Tanning Salon in Collinsville, Mississippi.[26] Bullock was sentenced to serve 10 years for the strong arm robbery, which the Circuit Court suspended for 10 years, and five years' probation.[27] Bullock violated the terms of his probation and was sentenced in April 2013 to serve the full ten year sentence.[28]

- Bullock was initially processed into the system like all other prisoners in the custody of MDOC at Central Mississippi Correctional Facility. On May 15, 2013, MDOC classified Bullock as "common labor."[29]

- Bullock began his sentence at Walnut Grove Correctional Facility in December 2013.[30] Bullock claims that, during that time, he contracted a debt with members of the Vice Lords prison gang.[31] Bullock testified that he believed that his father would provide him with money and that he "got the stuff on my word."[32] The "stuff" Bullock got was "[d]rugs, cell phone time, food."[33]

---

[21] **Exhibit "A"** at 63:1-7.
[22] **Exhibit "B"** at 29:7-8.
[23] **Exhibit "C"** at 7:1-5.
[24] **Exhibit "D"** at 9:2-11.
[25] **Exhibit "D"** at 9:11-13.
[26] **Exhibit "D"** at 9:15-17.
[27] **Exhibit "E."**
[28] **Exhibit "E."**
[29] **Exhibit "E."**
[30] **Exhibit "F."**
[31] **Exhibit "B"** at 7:18-23.
[32] **Exhibit "B"** at 7:6-8.
[33] **Exhibit "B"** at 7:21.

- Bullock was placed into protective custody in Walnut Grove.[34] Bullock testified that he was placed in protective custody because of his reports that he was being targeted by other gang members because of his debt.

- Bullock was transferred from Walnut Grove to EMCF on May 13, 2014.[35] Bullock was initially placed in Unit 2, but on May 20, 2014, he was transferred to McGrew's cell, number 106 on Unit 4 D.[36]

- No one at MTC has any record of Bullock requesting protective custody while at EMCF. Nor is there any record of any "red tag" or list of specific offenders Bullock named as a danger to him.

c. **The Murder of Charles Elliott McGrew**

- On the morning of June 10, 2014, McGrew and Bullock were cellmates in cell number 106, in Unit 4D. On that morning, MTC officials made rounds in Unit 4D multiple times, performing a count or security check on regular intervals. In MTC's log book for Unit 4 from that date, security checks or counts were performed in D Pod at 12:59 a.m., 1:06 a.m., 1:28 a.m., 1:30 a.m., 1:59 a.m., 2:34 a.m., 2:44 a.m., 3:00 a.m., 3:40 a.m., 4:00 a.m., 4:39 a.m., 5:04 a.m., 6:00 a.m., and 6:27 a.m. At 7:00 a.m., a certified count was performed. Counts or security checks in D Pod continued at 7:20 a.m., 10:11 a.m., 11:45 a.m., and a certified count at 12:00 a.m. At 12:33 there was a count clear.[37] There is no evidence that anything was wrong with McGrew at any of these times.

- For some years prior to his death, McGrew was suffering from prostate cancer. He was being treated during his incarceration by Dr. Charles Moore at the Southern Surgery & Urology Center in Hattiesburg, Mississippi. His last visit to Dr. Moore occurred on May 23, 2014, and his medical records from that day demonstrate that he was taking a number of medications, including albuterol sulfate, amlodipine, cyclobenzaprine, Flomax, Lisinopril, Paxil, and pravastatin.[38] In addition to the security checks and counts, MTC officials performed pill call for offenders on D Pod at 9:55 a.m. There is no record of any abnormality or that McGrew did not take his pills at that time.[39]

- At around 1:10 p.m., Correctional Officer Stephens entered Unit 4 D to transport McGrew. At around that time, she and Correctional Officer Jones entered cell 106 after calling McGrew's name a number of times. MTC officials discovered McGrew's body at approximately 1:11 p.m. on June 10, 2014.[40] McGrew had the bedsheet which Bullock used to strangle him around the neck.

---

[34] **Exhibit "E."**
[35] **Exhibit "F."**
[36] **Exhibit "F."**
[37] **Exhibit "H."**
[38] **Exhibit "G."**
[39] **Exhibit "H."**
[40] **Exhibit "I."**

*48068117-1* 6

- After interviewing Bullock, MTC officials initially believed that McGrew had committed suicide. Because of his erratic behavior, Bullock was sent to medical for holding. After several days, Bullock confessed to investigators with the Lauderdale County Sheriff's Department that he murdered McGrew. Bullock drafted a statement to that effect and ultimately plead guilty to second degree murder.[41]

- Although Bullock alleged in his confession that he was forced by members of an affiliated gang to murder McGrew, Bullock never named any co-conspirator in the murder.

## LEGAL STANDARD

Under Fed. R. Civ. P. 56(a), summary judgment is appropriate when, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The party seeking summary judgment bears the burden of demonstrating an absence of evidence to support the non-movant's case. *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 323 (1986). Once the movant shows that no genuine issue of material fact exists, the burden shifts to the non-movant to set forth specific facts to establish a genuine issue of material fact, without merely resting on allegations and denials. *Id.*

The non-movant's bare assertions, standing alone, are insufficient to create a material issue of fact and defeat a motion for summary judgment. *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Conclusory allegations unsupported by specific facts will not prevent an award of summary judgment; the Plaintiff cannot rest on his allegations to get to a jury without any significant probative evidence tending to support the complaint. *Nat'l Ass'n of Gov't Employees* v. *City Pub. Serv. Bd. of San Antonio*, 40 F.3d 698, 713 (5th Cir. 1994). Thus, the non-movant's burden cannot be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence. *Doe* v. *Dallas Indep. Sch. Dist.*, 153 F.3d 211, 215 (5th Cir. 1998). It is not the function of the court to search the record on the

---

[41] **Exhibit "I."**

non-movant's behalf for evidence which may raise a fact issue. *Topalian* v. *Ehrman*, 954 F.2d 1125, 1137 n. 30 (5th Cir. 1992).

## ARGUMENT

I. **Plaintiff's claims against MTC should be dismissed with prejudice, insofar as she cannot demonstrate any unconstitutional policy or custom.**

   a. **§ 1983 Standard.**

The elements of a claim under §1983 are determined by the right allegedly deprived. *See*, *e.g.*, *Albright* v. *Oliver*, 510 U.S. 266, 271 (1994) (internal cites omitted) ("Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'"). In other words, the statute is an enabling statute, allowing a plaintiff to bring a cause of action based upon a violation of an established federal right. Thus, it is necessary to examine the specific constitutional protections Plaintiff is claiming MTC violated.

In order to establish constitutional liability against MTC, Plaintiff must demonstrate more than vicarious liability; there is no vicarious liability for constitutional violations. A municipality – and for purposes of constitutional analysis, MTC is considered a municipality[42] – can be held liable under Section 1983 for violating a citizen's constitutional rights but only if "the governmental body itself 'subjects' [that] person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." *Connick* v. *Thompson*, 131 S. Ct. 1350, 1359 (2011). Governmental entities are "responsible only for [their] own illegal acts" and are "not vicariously liable under § 1983 for [their] employees' actions." *Id.* Thus, there is no *respondeat*

---

[42] *See Rosborough* v. *Mgmt. & Training Corp.*, 350 F.3d 459, 46 (5th Cir. 2003) ("[A] private entity acts under color of state law when that entity performs a function which is traditionally the exclusive province of the state…") (citations omitted); "The standards applicable to determining liability under § 1983 against a municipal corporation are applicable to determining the liability of a private corporation performing a government function." *Olivas* v. *Corr. Corp. of Am.*, 408 F. Supp. 2d 251, 254-55 (N.D. Tex. 2006).

*superior* liability under Section 1983; rather, the key to municipal liability is demonstrating that a deprivation of a constitutional right was inflicted pursuant to an official policy or custom of the municipality in question. *Monell* v. *Dep't of Soc. Serv.*, 436 U.S. 658, 694 (1978). The alleged unconstitutional conduct asserted "must be directly attributable to the municipality through some sort of official action or imprimatur." *Piotrowski* v. *City of R.H.*, 237 F.3d 567, 578 (5th Cir. 2001).

To establish constitutional liability against MTC, Plaintiff must establish 1) an official policy or custom, of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose "moving force" is that policy or custom. *Rivera* v. *R.H. Indep. Sch. Dist.*, 349 F.3d 244, 247-249 (5th Cir. 2003). A "policy or custom" can be either (1) a policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or (2) a persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. *McGregory* v. *City of Jackson*, 335 Fed. App'x. 446, 448-449 (5th Cir 2009). Plaintiff must also demonstrate a link between the policy and the constitutional violation, and the policy must be maintained with "objective deliberate indifference" to a constitutionally protected right. *Lawson* v. *Dallas County*, 286 F.3d 257, 263 (5th Cir. 2002). A municipality acts with objective deliberate indifference if it promulgates a policy or custom despite the "known or obvious consequences that constitutional violations would result." *Piotrowski*, 237 F.3d at 567. Deliberate indifference of this sort is a stringent test, and "a showing of simple or even heightened negligence will not suffice" to prove municipal culpability. *Id.* at 579.

To establish a *Monell* policy or custom, Plaintiff has essentially four different paths: 1) There was an unconstitutional policy adopted by the final policymaker; *Maddux* v. *Officer One*, 90 F. App'x 754, 757 (5th Cir. 2004); 2) There was an unwritten custom or practice that was not formally written or adopted, but that is a pervasive, long-standing practice that essentially has the force of law; *Sharp* v. *City of Houston*, 164 F.3d 923, 936 (5th Cir. 1999); 3) Where the Plaintiff can point to a failure to train, supervise, discipline, screen, etc.; *City of Canton* v. *Harris*, 489 U.S. 378 (1989); or 4) Where, in certain situations, the decisions or acts of a final policymaker may be attributable to the municipality; *City of St. Louis* v. *Praprotnik*, 485 U.S. 112, 123 (1988). In this case, MTC had no formal or any other policy which was facially unconstitutional, and Plaintiff has made no allegations of anything done by a "final" policymaker, so the only path to liability would be to prove either an unwritten custom or a failure to implement a certain policy. Plaintiff can demonstrate neither.

  b. **Plaintiff's claims for "unconstitutional conditions of confinement" and "episodic acts or omissions" do not apply to the facts of this case, because McGrew was not a pretrial detainee at the time of his suicide.**

In her inarticulate Amended Complaint, Plaintiff confuses the distinction – and thereby the duty owed – between a pretrial detainee, who has yet to be convicted, and a prisoner who has been convicted (in this case of capital murder with no chance for parole). She brings her claims against MTC for "unconstitutional conditions of confinement" and for "episodic acts and omissions," the two lines of attack available to a pretrial detainee, who, having never been convicted of the crime for which he is held, is not allowed to be punished. *See Hare* v. *City of Corinth, Mississippi*, 74 F. 3d 633, 644-45 (5th Cir. 1996); *Reed* v. *Wichita County (Estate of Henson)*, 795 F.3d 456, 462 (5th Cir. 2015). Because a pretrial detainee has never been convicted of the crime for which he is being held, it is unlawful to "punish" him for that crime.

*Bell* v. *Wolfish*, 441 U.S. 520, 535 (1979). This mandates higher standards for the "conditions of confinement" and the "episodic acts and omissions" than that required under the Eighth Amendment for a convicted prisoner. *See Ingraham* v. *Wright*, 430 U.S. 651, 669 (1977) (quoting *Morrissey* v. *Brewer*, 408 U.S. 471, 482 (1972)) ("The prisoner's conviction entitles the State to classify him as a 'criminal,' and his incarceration deprives him of the freedom 'to be with family and friends and to form the other enduring attachments of normal life.'"). In this case, Plaintiff's decedent was a felon, who had been convicted of the unlawful touching of child. The standards of proof applicable to a pretrial detainee, therefore, do not apply with any force in this case.

      **c.    Even under the standards applicable to a claim by a pretrial detainee, which are higher, the facts of this case do not demonstrate any violation of McGrew's constitutional rights.**

Plaintiff alleged in her Complaint that MTC had

> unwritten policies, customs, and practices [which] include but are not limited to: a. Inadequate and improper training, hiring, supervision and discipline of EMCF officer; b. Failing to institute proper gang management policies and procedures; c. Failing to prevent and/or investigate threats of violence made against inmates by other inmates which are reported to EMCF officials; d. Failing to establish policies and procedures to limit the flow of illegal contraband into the facility, including but not limited to drugs, weapons, and cell phones, all of which contributed to the atmosphere of violence at EMCF; e. Failure to make proper rounds/cell checks within the established guidelines to ensure inmates' safety; and f. Improper classification of inmates.[43]

In order to prove official policy through pattern and practice, a plaintiff must demonstrate that there existed "a persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Hicks-Fields* v. *Harris Cty., Texas*, 860 F.3d 803, 808 (5th Cir. 2017) (quotation omitted); *see also J.M.* v. *Management & Training*

---

[43] [Doc. 1] at

*Corp.*, 2017 U.S. Dist. LEXIS 142958, *23 (S.D. Miss. Sept. 5, 2017). A plaintiff must also establish "actual or constructive knowledge of such custom by the municipality or the official who had policymaking authority." *Id.* (Internal citations omitted).

> Actual knowledge may be shown by such means as discussions at council meetings or receipt of written information. Constructive knowledge may be attributed to the governing body on the ground that it would have known of the violations if it had properly exercised its responsibilities, as, for example, where the violations were so persistent and widespread that they were the subject of prolonged public discussion or of a high degree of publicity.

*Id.* at 808-09 (quotation omitted).

"A pattern is tantamount to official policy when it is 'so common and well-settled as to constitute a custom that fairly represents municipal policy.'" *Peterson* v. *City of Fort Worth, Tex.*, 588 F.3d 838, 850 (5th Cir. 2009) (quoting *Piotrowski*, 237 F.3d at 578). A plaintiff must demonstrate a pattern of sufficiently similar and numerous prior abuses that transcends a single error, and "[w]here prior incidents are used to prove a pattern, they must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees." *Id.* at 850-51 (quotation omitted). "A pattern requires similarity and specificity; prior indications cannot simply be for any and all 'bad' or unwise acts, but rather must point to the specific violation in question." *Id.* at 851 (quotation omitted).

Here, McGrew was murdered in his cell, during the daytime hours, by his cellmate, Brian Bullock. MTC was not responsible for placing Bullock at EMCF; that was the sole responsibility of MDOC. Bullock never reported his intentions of killing McGrew to anyone at MTC or MDOC, and no one at MTC had any reason to suspect that Bullock posed a threat to McGrew. Though Plaintiff has alleged that MTC was negligent in failing to properly conduct rounds and do cell checks, she has not provided any competent summary judgment evidence that

MTC had a pattern or practice of failing to make checks of cells. Likewise, Plaintiff cannot demonstrate that MTC failed to properly hire, train, or supervise its staff on the day in question, nor can she demonstrate that any additional training, supervision, etc. would have prevented Brian Bullock from murdering McGrew in his cell. Although prison officials have a constitutional duty to protect prisoners from violence at the hands of their fellow inmates, where, as here, there were no objective or subject indications that Bullock was likely to kill McGrew, the prison operator cannot be held constitutionally liable.

**II.    Like her constitutional claims, Plaintiff's state law claims fail as a matter of law.**

    **a.    Plaintiff cannot demonstrate that MTC acted with negligence.**

First, Plaintiff alleged separate counts of negligence/gross negligence,[44] negligent hiring and supervision,[45] and respondeat superior/vicarious liability.[46] Under Mississippi law, there is no standalone cause of action for "respondeat superior" or vicarious liability; instead, they are merely an alternative path to impose corporate liability. *See Jordan* v. *Premier Entm't Biloxi, LLC*, No. 1:13CV195-LG-JCG, 2014 WL 5773762, at *2, FN 2 (S.D. Miss. Nov. 6, 2014). Thus, MTC will address the general law of negligence and the claims of negligent hiring, training, and supervision.

To succeed in a negligence claim, the Plaintiff must establish a duty and present competent evidence that the Defendant breached that duty and that the breach actually and proximately caused her injuries. *Palmer* v. *Anderson Infirmary Benevolent Ass'n*, 656 So. 2d 790, 794 (Miss. 1995) (internal citations omitted). Under Mississippi law, the operator of a large prison with convicted inmates owes no general duty to keep every prisoner free from harm. Thus, Plaintiff's claims fail on this element alone. Like the constitutional claims, Plaintiff

---

[44] [Doc. 1] at ¶¶ 26-29.
[45] [Doc. 1] at ¶¶ 30-31.
[46] [Doc. 1] at ¶¶ 32-33.

attempts to impose some sort of strict liability on MTC. While Mississippi law has imposed "a duty upon a sheriff in this capacity as jailer to exercise ordinary and reasonable care for the preservation of the life and health of his prisoners," this duty has not been extended to supervisors at large prisons, such as the state penitentiary. *Bogard* v. *Cook*, 405 F. Supp. 1202, 1215 (N.D. Miss. 1975) aff'd, 586 F.2d 399 (5th Cir. 1978). *Id.* at 1216. The reason for not extending this duty is because of the much larger number of inmates housed at the state penitentiary as compared to a jail operated by a sheriff. *Id.* The *Bogard* Court noted that "it would be rare for a sheriff to have custody of more than two dozen prisoners at any time, at least half of whom would probably be pre-trial detainees rather than persons serving time pursuant to a conviction and sentence of a state court." *Id.*

Plaintiff's claim for vicarious liability fails because she cannot identify any MTC employee who acted negligently. An entity (such as MTC) can be held liable for the acts or omissions of its employees acting within the course and scope of their employment. *See Ford* v. *Lamar Life Ins. Co.*, 513 So. 2d 880, 888 (Miss. 1987) (Under the law of agency, "a principle is bound by the actions of its agent within the scope of that agent's real or apparent authority.") However, the logical corollary to that proposition is that the Plaintiff must present some evidence to create a question of fact about which employee breached a duty to McGrew. First, Plaintiff has failed to identify the employees she claims were negligently hired. Plaintiff plead the identity of "John and Jane Does 1-100 who are unknown MTC officers, employees, agents, and or servants" and promised to amend the Complaint to identify them.[47] However, Plaintiff failed to make such an amendment. Without identifying which employee acted improperly in failing to prevent Bullock from murdering McGrew, Plaintiff cannot present any claim to the jury.

---

[47] [Doc. 1] at ¶ 7.

### b. Plaintiff's claim for negligent hiring, training, and supervision fails because she cannot identify any MTC employee whose acts or omissions were the proximate cause of McGrew's death.

Likewise, Plaintiff cannot demonstrate any record evidence that would support any claim that MTC acted in negligently hiring, training, or supervising its employees. A "claim of negligent hiring, retention, and supervision ... is simply a negligence claim, requiring a finding of duty, breach, causation and damage." *Stephens* v. *Harrison Cty., Miss.*, No. 1:07CV96 LG-JMR, 2009 WL 588599, at *4 (S.D. Miss. Mar. 5, 2009) (internal quotes omitted). In Mississippi, "an employer will be liable for negligent hiring or retention of his employee when an employee injures a third party if the employer knew or should have known of the employee's incompetence or unfitness." *Parmenter* v. *J & B Enterprises, Inc.*, 99 So. 3d 207, 217 (Miss. Ct. App. 2012) (citing *Doe* v. *Pontotoc County Sch. Dist.,* 957 So.2d 410, 416–17 (Miss. Ct. App. 2007)). "Relatedly, if an employer exercises due care in the hiring of its employees, that employer will not be liable for the injuries of a third party unless that party can prove the employer knew or should have known of the incompetence and unfitness of the employee." *Id.* This can be proven through actual or constructive notice. *Id.*

Without identifying the specific individuals who were negligent – because she cannot – Plaintiff cannot demonstrate that the negligent hiring, training, and/or supervision was the actual and proximate cause of McGrew's death. McGrew's murder was a tragic incident; but its prevention would have required a miraculous intervention of good fortune on the part of any MTC employee. To reiterate, McGrew was murdered in his cell by his cellmate. He was not murdered with any contraband; instead, he was choked with a torn off portion of his bed sheet. There is no evidence to suggest that any MTC employee had any knowledge of Bullock's

intention to murder McGrew or any complicity in assisting him in carrying out the murder. For those reasons, Plaintiff's state law claims fail as a matter of law.

### III. Plaintiff can demonstrate no fact which would support any liability for punitive damages on the part of MTC.

#### a. The question of punitive damages is ripe for disposal on summary judgment.

Under the statute governing punitive damages, Courts are required to determine whether or not a claim for punitive damages should be placed before the trier of fact. "The *court* shall determine whether the issue of punitive damages may be submitted to the trier of fact…" Miss. Code Ann. § 11-1-65(d) (emphasis added). "In deciding whether to submit the issue to the jury, *the court should decide* 'whether, under the totality of the circumstances and viewing the defendant's conduct in the aggregate, a reasonable, hypothetical trier of fact could find either malice or gross neglect/reckless disregard.'" *Berhow* v. *The Peoples Bank*, 423 F. Supp. 2d 562, 574 (S.D. Miss. 2006) (emphasis added) (internal cites omitted). Therefore, the question of whether or not to submit the issue of punitive damages is a question of law, which can and should be decided at the summary judgment stage.

#### b. Under Mississippi law, there is no vicarious liability for punitive damages.

It is black letter law in Mississippi that there is no vicarious liability for punitive damages, since the purpose of punitive damages is to punish and deter rather than to compensate the injured. The statute itself says as much: it provides for punitive damages only if, ". . . *the defendant against whom punitive damages are sought* acted with actual malice, gross negligence . . . , or committed actual fraud." Miss Code Ann. § 11-1-65(1)(a) (emphasis added).

Further, Plaintiff cannot demonstrate any fact which would support the imposition of punitive damages *against MTC.* The district courts in the Southern and Northern Districts of Mississippi have routinely held that punitive damages are not available under the Mississippi law

based solely upon vicarious liability. *See, e.g.*, *King* v. *Cole's Poultry, LLC*, No. 1:14-cv-88-MPM-DAS, 2016 U.S. Dist. LEXIS 164359, 2016 WL 6993763, at *12 (N.D. Miss. Nov. 29, 2016) (collecting cases); *Littlejohn* v. *Werner Enterprises, Inc.*, No. 1:14-CV-00044-SA-DAS, 2015 U.S. Dist. LEXIS 71007, 2015 WL 3484651, at *2 (N.D. Miss. June 2, 2015) (citing *Duggins* v. *Guardianship of Washington Through Huntley*, 632 So. 2d 420, 433 (Miss. 1993) (Lee, J., dissenting)); *Bass* v. *Hirschbach Motor Lines, Inc.*, No. 3:14CV360-TSL-JCG, 2014 U.S. Dist. LEXIS 145712, 2014 WL 5107594, at *3 (S.D. Miss. Oct. 10, 2014); *Bradley* v. *Wal-Mart Stores, Inc.*, No. 2:04CV360-JMR, 2006 U.S. Dist. LEXIS 70110, 2006 WL 2792338, at *4 (S.D. Miss. Sept. 27, 2006); *see also Gamble ex rel. Gamble* v. *Dollar General Corp.*, 852 So. 2d 5, 15 (Miss. 2003) (looking only to the acts of Dollar General itself, not those by its employee alone which violated store policy, in determining if the proof offered at trial demonstrated the question of punitive damages should have been allowed to go to the jury).

As noted above, Plaintiff has failed to identify any action by MTC which would constitute malice or any other factor making consideration of punitive damages appropriate. To warrant jury consideration of punitive damages, a Plaintiff bears the burden of demonstrating a question of fact on, "whether the aggregate of the defendant's conduct evidences willful or wanton conduct or the commission of a fraud." *Bradfield* v. *Schwartz*, 936 So. 2d 931, 937 (Miss. 2006). Because Plaintiff cannot demonstrate conduct on the part of MTC warranting punitive damages, the Court should hold that the claims fail as a matter of law.

c. **To the extent that MTC has any liability, the facts of this case do not demonstrate the sort of gross negligence, recklessness, or maliciousness which would merit jury consideration of punitive damages.**

Mississippi law disfavors punitive damages, and they are only to be awarded in the most egregious cases. *Warren* v. *Derivaux*, 996 So. 2d 729, 738 (Miss. 2008) (internal cites omitted).

Without undermining the seriousness of the incident which gives rise to this litigation, there is simply no evidence of any conduct on the part of MTC that would allow an award of punitive damages. To recover punitive or exemplary damages, a claimant must show by clear and convincing evidence that a defendant against whom such damages are sought acted, "with actual malice, gross negligence which evidences a willful, wanton or reckless disregard for the safety of others…" Miss. Code Ann. § 11-65-1(1)(a).

Assuming *any* negligence on the part of MTC, which MTC explicitly denies, there is no evidence that *MTC* did anything that was malicious, wanton, or reckless. Plaintiff certainly has not produced any such evidence, which is her burden alone to carry.

## **CONCLUSION**

The only person who is legally responsible for the death of Charles Elliott McGrew is Brian Bullock, who is serving a sentence for McGrew's murder at the Mississippi State Penitentiary at Parchman. The Plaintiff has wholly failed to set forth any credible, competent evidence that MTC's acts or omissions caused or contributed to McGrew's death. The Court can take judicial notice of the fact that gangs are a reality in all prisons, whether they are operated by the State of Mississippi (or any other state), the federal government, or any private prison company. Bullock was admittedly involved with gangs since he was 13 years old, and he knew the consequences of his actions in running up a debt with gang members.

However, there is nothing in the record that demonstrates that MTC knew or should have known that Bullock posed any credible threat to McGrew or any other offender at EMCF. Bullock never told anyone that gang members were extorting him into committing the murder of anyone, much less his cellmate. Nor has Plaintiff demonstrated that any of its policies or customs contributed to McGrew's death. In both the state and federal claims, Plaintiff seeks to

impose strict liability on MTC because an unfortunate murder happened within the walls of EMCF.  There are no genuine issues of material fact, and MTC is entitled to judgment as a matter of law.

Dated: September 21, 2017.

> Respectfully submitted,
>
> **MANAGEMENT & TRAINING CORPORATION**
>
> By: *s/ H. Richard Davis, Jr.*
> R. Jarrad Garner (MSB# 99584)
> H. Richard Davis, Jr. (MSB# 103983)
> Adams and Reese, LLP
> 1018 Highland Colony Parkway, Suite 800
> Ridgeland, Mississippi 39157
> Office: (601) 353-3234
> Fax:    (601) 355-9008
> jarrad.garner@arlaw.com
> richard.davis@arlaw.com

## **CERTIFICATE OF SERVICE**

I, H. Richard Davis, Jr., one of the attorneys for Defendant Management & Training Corporation do hereby certify that I have, this day, filed the foregoing with the Clerk of Court via the CM/ECF system, which has caused a true and correct copy to be served on all counsel of record.

Dated: September 21, 2017.

> *s/ H. Richard Davis, Jr.*
> H. Richard Davis, Jr.