IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

| | |
|---|---|
| SANDRA FAY GIPSON, as Administratrix, ) and Personal Representative on Behalf of ) the Wrongful Death Beneficiaries of the ) Estate of CHARLES ELLIOT McGREW, ) Deceased )     *Plaintiff* ) ) vs. ) ) MANAGEMENT & TRAINING ) CORPORATION and JOHN and JANE ) DOES 1-100, )     *Defendants* ) | **Civil Action No. 3:16-cv-624-DPJ-FKB** |

**MTC'S MEMORANDUM OF AUTHORITIES SUPPORTING
ITS FIRST MOTION IN LIMINE**

The Defendant Management & Training Corporation ("MTC") moves this Court for an Order excluding from trial all mention of or evidence from the *Dockery* class action concerning the conditions of confinement at East Mississippi Correctional Facility, and would show in support the following:

**INTRODUCTION**

On May 30, 2013, a class of plaintiffs filed suit against Christopher Epps – the then Commissioner of the Mississippi Department of Corrections – and others challenging the conditions of confinement at EMCF in the United States District Court for the Southern District of Mississippi, the Honorable William J. Barbour presiding.  Though the class makes allegations against MTC for its operation of EMCF, MTC is not a defendant in that litigation.  Pertinent to this motion, the District Court has yet entered any final judgment, and there have been no findings of fact or conclusions of law which would trigger any preclusion doctrine.  The only

"findings" made in *Dockery* were that the Plaintiffs met the threshold necessary for the District Court to certify a civil rights class under Fed. R. Civ. P. 23.

The Plaintiff in this case is the ex-wife of Charles "Elliott" McGrew, an inmate who was murdered by his cellmate at EMCF on June 10, 2014. Elliott McGrew was not named as a party plaintiff in the *Dockery* action, and prior to his murder, he never challenged the conditions of his confinement. Indeed, the crux of this case – should the Court determine that there are any fact issues for trial – centers on whether or not MTC was properly on notice that McGrew was in danger. The plaintiffs in *Dockery* alleged multiple constitutional violations from discrete policy issues, including: EMCF's solitary confinement program, the provision of mental health care, the provision of medical care, abuse and excessive force by staff, sanitation and environmental conditions, nutrition and food safety, and retaliation for seeking redress of grievances.

There is one section in the complaint concerning inmate on inmate violence at EMCF. But any similarity between this case and *Dockery* ends there. For example, the *Dockery* plaintiffs allege that "correctional staff at EMCF actively arrange and enable attacks on prisoners."[1] There is no evidence or even allegation that any MTC staff was complicit in the murder of McGrew.[2] The *Dockery* plaintiffs allege that EMCF staff knew about an inmate having a spear that the inmate used in a later attack.[3] Bullock used a sheet to strangle McGrew in his cell and not some illegal contraband. The *Dockery* plaintiffs allege an incident where EMCF employees witnessed eight inmates beating and raping another inmate and refused to intervene. Again, there is no similarity between that situation and McGrew's murder.

---

[1] **Exhibit "A"** - Dockery complaint at ¶ 210.
[2] Because this accurate statement will no doubt draw the incredulous response that MTC's actions led to the death of McGrew, MTC only means here that there is no allegation or evidence that any MTC employee conspired with any prisoner, including Bullock, to murder McGrew.
[3] **Exhibit "A"** at ¶ 224.

The unfounded allegations – and they are unfounded at this point – from the prisoner class in *Dockery* are irrelevant as to whether MTC violated McGrew's constitutional or common law claims. Moreover, the only possible use Plaintiff could have for these allegations would be to impute "bad character" evidence that is forbidden under Rule 404(b). Finally, to the extent the Court finds any relevance, the overwhelming possibility of undue prejudice and jury confusion substantially outweighs any probative value that the evidence would have and is forbidden under Rule 403.

## FACTUAL/PROCEDURAL BACKGROUND

At the time of his death, Elliott McGrew was serving a 13 year sentence arising out of his 2012 conviction for sexually assaulting his third wife's 7 year old granddaughter. In May 2014, the Mississippi Department of Corrections – which has plenary control over where inmates serve their time – transferred Brian Bullock from Walnut Grove Correctional Facility to East Mississippi Correctional Facility. Bullock testified that members of his gang – or its affiliates – extorted him based upon a drug debt he incurred at Walnut Grove. Bullock never disclosed the details of the extortion to any prison official at MTC or MDOC. Bullock testified that the gang members ordered him to kill McGrew or face punishment himself.

In May 2014, Bullock was placed in a cell with McGrew in Unit 4D of EMCF. There is no record evidence of any dispute or friction between McGrew and Bullock before Bullock murdered McGrew in cold blood. Nor is there record evidence that would support a finding of constructive notice that Bullock posed a threat to McGrew or any other inmate. Yet, during the morning hours of June 10, 2014, Bullock strangled McGrew in their cell and attempted to make the incident appear as a suicide. Upon questioning, law enforcement officers with the

Lauderdale County Sheriff's Department extracted a confession from Bullock that he actually murdered McGrew.

Sandra Gipson filed suit in this Court on May 22, 2016 alleging that MTC and unnamed John Doe defendants violated McGrew's Fourteenth and Eighth Amendment rights, along with his common law rights. The factual bases for her theories of liability – be it constitutional or common law – are twofold: First, MTC knew or should have known that Bullock posed a danger to McGrew or any cellmate because Bullock complained that gangs were after him for drug money; and second, MTC failed to properly make rounds or train its employees, and that failure actually and proximately caused McGrew's murder.

## LEGAL STANDARD

"The purpose of a motion *in limine* is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence." *Harkness* v. *Bauhaus U.S.A., Inc.*, 2015 WL 631512, at *1 (N.D. Miss. Feb. 13, 2015) (additional citations omitted). When ruling upon motions *in limine*, the Court notes that "[e]vidence should not be excluded ... unless it is clearly inadmissible on all potential grounds." *Id.* (quoting *Fair* v. *Allen*, 2011 WL 830291, at *1 (W.D. La. Mar. 3, 2011)) (emphasis added). "The purpose of motions *in limine* is not to re-iterate matters which are set forth elsewhere in the Rules of Civil Procedure or Rules of Evidence, but, rather, to identify specific issues which are likely to arise at trial, and which, due to their complexity or potentially prejudicial nature, are best addressed in the context of a motion *in limine*." *Maggette* v. *BL Dev. Corp.*, Nos. 2:07-cv-181-M-A, 2:07-cv-182-M-A, 2011 WL 2134578, at *4 (N.D. Miss. May 27, 2011).

## ARGUMENT

**I.     Evidence from the *Dockery* class action has no probability to make any fact of consequence in this case more or less true and is irrelevant.**

      **a.**      **The allegations of *Dockery* are unreliable because they are just that.**

The Plaintiff wishes to introduce allegations and innuendo from *Dockery* to paint a portrait of EMCF as some medieval dungeon, devoid of all humanity and in violation of all inmates' constitutional rights. Given the dearth of evidence that MTC actually did anything wrong in this case, this impulse is understandable. But the allegations from *Dockery* are just that: allegations and not conclusive facts. The Plaintiff would like to aggregate these facts into a bundle and bludgeon MTC at trial with the false perception that McGrew spent his final hours in some outer ring of hell where his murder was inevitable.

If a jury or the District Court in *Dockery* had ever made any findings about the conditions of prisoner confinement, this case would be different. If that were the case – under certain very limited circumstances – the Plaintiff could argue non-mutual issue preclusion or offensive collateral estoppel to establish constitutionally deliberate indifference on the part of MTC. In simpler terms, the Plaintiff could use any previous findings of deliberate indifference as the baseline for the facts leading to McGrew's death if she could produce admissible evidence that MTC failed to correct those conditions. This is because non-mutual issue preclusion would apply, where, "a plaintiff seeks to estop a defendant from relitigating an issue which the defendant previously litigated ***and lost*** against another plaintiff." *Appling* v. *State Farm Mut. Auto. Ins. Co.*, 340 F.3d 769, 775 (9th Cir. 2003) (emphasis added). Like any preclusion doctrine, the application of issue preclusion is narrow and is based only upon actual findings and not allegations. *See Williams* v. *New Orleans*, 565 F.2d 874, 874-75 (5th Cir. 1978); *J.R. Clearwater* v. *Ashland Chem. Co.*, 93 F.3d 176, 179 (5th Cir. 1996) (denying injunctive relief on preventing state law suit where no final order had been entered in class action, noting "[f]inality is an essential component of the concepts of both res judicata and collateral estoppel…An order

denying class certification is not a final judgment, and therefore is not appealable as a matter of right until conclusion of the litigation in the district court.") (Internal cites omitted).

*Dockery* is ongoing. As of this writing, there were 590 docket entries, and no final judgments or consent decrees. The document from which Plaintiff has drawn so much inspiration was Judge Barbour's order certifying the class action. But a class action certification is not a final judgment to be afforded preclusive effect; indeed, such an order is subject to attack throughout the litigation process. *See Richardson* v. *Byrd*, 709 F.2d 1016, 1019 (5th Cir. 1983) ("The district judge must define, redefine, subclass, and decertify as appropriate in response to the progression of the case from assertion to facts.") That is precisely what the *Dockery* defendants are currently in the process of doing.[4]

      **b.**    **Whatever acts formed the basis for *Dockery* are irrelevant to this case.**

"Irrelevant evidence is not admissible." F.R.E. 402. The test for relevant evidence is if, "it has any tendency to make a fact more or less probable than it would be without the evidence; and…the fact is of consequence in determining the action." F.R.E. 401. This case turns on whether or not MTC was deliberately indifferent for housing Brian Bullock with McGrew and whether or not MTC was deliberately indifferent for failing to prevent Bullock from strangling McGrew in their cell. It has absolutely nothing to do with the sanitation at EMCF, the nutrition of inmates' food, or abuse from guards.

The only potential relevance any of the ***allegations*** of *Dockery* might have would be the allegations of inmate on inmate assaults if MTC were to deny that there was sometimes violence in prisons. In other words, if MTC denied knowledge that prisoners assaulted other prisoners, *Dockery* might become relevant to show that MTC was on notice. But MTC has made no such denial in this or any other case. Prisons are harsh environments, and the constitution does not

---

[4] **Exhibit "B"** – Motion to Decertify Class.

require prison operators to provide sterile, comfortable quarters for convicted felons. *See Williams* v. *Hampton*, 797 F.3d 276, 290 (5th Cir. 2015) ("That is analogous to a form of strict liability for corrections officers such as Hampton, and the Eighth Amendment does not support such a theory of culpability.")  It does require that those charged with the care of prisoners to avoid deliberate indifference to the health and safety of prisoners.  The far-reaching allegations from *Dockery* would not tend to prove or disprove any fact of consequence in this litigation. Therefore, the facts from *Dockery* are irrelevant and inadmissible at this trial.

**II.     The only "relevance" that the *Dockery* allegations would have would be as "bad character" evidence, which is forbidden under Rule 404(b).**

"Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." F.R.E. 404(b)(1).  "The threshold inquiry a court must make before admitting similar acts evidence under Rule 404(b) is whether that evidence is probative of a material issue other than character."  *Huddleston* v. *United States*, 485 U.S. 681, 686 (1988).  In briefing in this case, the Plaintiff has continually referred the Court to *Dockery* and cited in her favor both quotes from Judge Barbour's opinion certifying the class and evidence before him in that case.  It is clear that she will attempt to use evidence and statements from Judge Barbour's opinion as evidence that bad things happened at EMCF.  But the only probative value that this "evidence" would have is to paint MTC as a bad actor.  The fact that other assaults happened at EMCF – many of which occurred before MTC began operating the prison in 2012 – has no logical bearing on whether or not MTC acted properly in housing Bullock with McGrew and allowing Bullock to murder McGrew in their cell.

**III.      The substantial likelihood of jury confusion and undue prejudice to MTC outweighs any probative value that *Dockery* evidence might have.**

Even if the facts or evidence from *Dockery* meet the other tests for admissibility, the Court should still exclude the evidence because of the likelihood that the evidence would both confuse the jury and unduly prejudice MTC. "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." F.R.E. 403. The whole of EMCF and how it is operated is not on trial in this case; that fight is ongoing in *Dockery*. Instead, this case concerns whether or not MTC violated Elliot McGrew's constitutional and common law rights by placing Brian Bullock in a cell with him and by not preventing Bullock from strangling him in that cell.

**a.      The allegations and other facts from *Dockery* would confuse the jury.**

Although the Court would certainly instruct the jury on the law applicable to this case and not to base decisions on the conduct alleged in *Dockery*, the admission of evidence from that class action would still overwhelm and confuse the jury. In *Dockery*, Judge Barbour certified a general class of all prisoners at EMCF and three subclasses, including an "Isolation Subclass," a "Mental Health Subclass," and a "Units 5 and 6 Subclass." Since this case involves nothing concerning the provision of health care or mental health care, any facts related to the provision of health care or mental health care to other prisoners in *Dockery* would only confuse the jury in this case. Likewise, the "isolation" claims. At its core, the Plaintiff's claims in this case are based upon the allegation that MTC should have protected McGrew from Bullock murdering him. If there was a subclass in *Dockery* on assaults by inmates on other inmates in Unit 4D, those facts might be relevant and assist the jury in determining liability in this case. There is no

subclass, and allowing the Plaintiff to cherry pick various assertions from the thousands of pages of documents filed in *Dockery* would distract and confuse the jury.

### b. The *Dockery* evidence would unduly prejudice MTC.

Just as the *Dockery* evidence would overburden and confuse the jury, admission of that evidence would unjustly prejudice MTC in this case. Even the mention of a class action lawsuit involving the conditions of confinement at EMCF would allow jurors to speculate and conclude that EMCF is unfit to house prisoners. And evidence that multiple prisoners were assaulted at EMCF – regardless of the nature of the assault and the facts underlying each – could lead to the improper conclusion that MTC failed to protect McGrew from Bullock.

## CONCLUSION

The Court should issue an order precluding the Plaintiff, her counsel, and any of her witnesses from referring to or including evidence from the *Dockery* class action litigation that is currently pending.

Dated: January 26, 2018.

Respectfully submitted,

**MANAGEMENT & TRAINING CORPORATION**

By: s/H. Richard Davis, Jr.
R. Jarrad Garner (MSB# 99584)
H. Richard Davis, Jr. (MSB# 103983)
Adams and Reese, LLP
1018 Highland Colony Parkway, Suite 800
Ridgeland, Mississippi 39157
Office: (601) 353-3234
Fax:    (601) 355-9708
jarrad.garner@arlaw.com
richard.davis@arlaw.com

## CERTIFICATE OF SERVICE

I, H. Richard Davis, Jr., one of the attorneys for the Defendant, Management & Training Corporation, do hereby certify that I have, this day, filed the foregoing with the Clerk of Court using the CM/ECF system, which has caused a true and correct copy to be served on all counsel of record.

Dated: January 26, 2018.

                                                s/H. Richard Davis, Jr.
                                                H. Richard Davis, Jr.