IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

| | | |
|---|---|---|
| SANDRA FAY GIPSON, as Administratrix, ) and Personal Representative on Behalf of ) the Wrongful Death Beneficiaries of the ) Estate of CHARLES ELLIOT McGREW, ) Deceased ) *Plaintiff* ) ) vs. ) ) MANAGEMENT & TRAINING ) CORPORATION and JOHN and JANE ) DOES 1-100, ) *Defendants* ) | | **Civil Action No. 3:16-cv-624-DPJ-FKB** |

**MEMORANDUM OF AUTHORITIES
SUPPORTING MTC'S SECOND MOTION IN LIMINE**

The Defendant Management & Training Corporation ("MTC") requests an order from the Court excluding certain evidence that could only be based upon inadmissible hearsay, and would show in support the following:

**INTRODUCTION**

The Plaintiff has two theories of liability in this case: 1) That MTC should have taken extra precautions with Brian Bullock that would have prevented him from murdering Elliott McGrew; and 2) That MTC failed to properly hire, train, or supervise certain unnamed employees, resulting in McGrew's death. The lion's share of evidence supporting the first claim will come from the testimony of Brian Bullock, who confessed to murdering McGrew. Virtually all of that testimony will be self-serving and inconsistent. If the Court allows the trial to go forward, MTC would impeach Bullock's testimony on those and other grounds. But much of

that same testimony would also contain hearsay – sometimes in multiple layers.  The Court should preclude Bullock from offering any testimony prohibited by Rule 802.

## FACTUAL/PROCEDURAL BACKGROUND

The following facts relate to this Motion in Limine.  Brian Bullock murdered Elliott McGrew at some time before 1:30 p.m. on June 10, 2014.  After staging the act to appear as a suicide, Bullock confessed to the murder several days later, and the Circuit Court of Lauderdale County, Mississippi convicted him on second degree murder.  Bullock is still serving time for that offense.

During this litigation, the parties took Bullock's deposition.  Since one of the Plaintiff's operative theories of the case is that MTC knew or should have known that Bullock was likely to kill McGrew and failed to act, much of Bullock's testimony is relevant.  But relevance alone does not make testimony admissible; that testimony must pass other reliability muster set forth in the Federal Rules of Evidence.  A great number of events that Bullock testified to in his deposition – and that the Plaintiff would like to elicit at trial – is based upon rank, inadmissible hearsay.

Specifically, Bullock testified about threats to him by other gang members, both at Walnut Grove and EMCF.  He also testified about statements he made to unidentified prison officials at MTC.  He offers statements attributed to unidentified inmates.  Finally, he offered testimony about what a "psych nurse" at EMCF said to MTC employees about McGrew to another MTC employee.  All of these statements are inadmissible hearsay.  Below is a chart of the statements made, along with the corresponding cites to the deposition.  Analysis follows.

| Hearsay Declarant | Statement |
|---|---|
| Unidentified gang members at Walnut Grove | "Well, there was a guy that they wanted smashed for violating our codes and policies and our laws, and when I refused to do that – you'll see it's on the – it's all on the record."[1] |
| Unidentified gang members at Walnut Grove | "Yeah, but this is what your business is. If you don't handle the business, you're going to become the business that he is."[2] |
| Brian Bullock | "I advised them that of the hole situation from RJ, to me, to the whole thing, and it was like it didn't matter."[3] |
| Ernesto Sanchez | "He asked me about how I was going to go about clearing up my debt. I told him, I said, "I can't…I'm going to have to do something, but I don't know what I'm going to have to do to clear the debt. I can't pay it."[4] |
| Ernesto Sanchez | "[H]e was going to see what he could do and all this stuff for me, because he was a high-ranking official."[5] |
| "Moody." | "A dude named Moody, you know, calling me to the door, asking me about a brother's money."[6] |
| "Moody" | "Look, we've got a problem with this guy. Well, you've got this. You can't pay this, we've got this, here's your solution. Handle your business. If you don't handle your business, we're going to handle you."[7] |
| Moody or unknown gang members | "Actually, their exact words were, "Kill him or you're going to be killed."[8] |
| Moody | "I talk to guys at Walnut Grove every day and they're asking about their money. What is Sanchez going to do |

---

[1] **Exhibit "A"**, Excerpts from Deposition of Brian Bullock at 10:3-6.
[2] **Exhibit "A"** at 11:14-17.
[3] **Exhibit "A"** at 12:15-17.
[4] **Exhibit "A"** at 14:23-25; 15:1-3.
[5] **Exhibit "A"** at 15:4-6
[6] **Exhibit "A"** at 15:9-11
[7] **Exhibit "A"** at 15:12-16
[8] **Exhibit "A"** at 15:23-25

|  | about that money. He's over you. If you can't pay, it falls on him."[9] |
|---|---|
| Unnamed inmate | "If you don't want to get gunned down, you need to get out of my room."[10] |
| Unknown | "If somebody owes them and they don't pay them and they're plugged in with this affiliation or they're a Gangster or a Vice Lord, they'll go tell the guys that are on the tier with them, 'This person won't pay his debt.'"[11] |
| Unknown | "[T]hey gave me their word that I was going to be moved out of state for my protection."[12] |
| Unknown | "A lot of pressure was being put on me about the money from Walnut Grove."[13] |
| Vice Lords, in general | "You're going to have to come up with the money or you're going to have to do something for us, or you're going to have to be the business."[14] |
| Unidentified psych nurse | "So when asked by Investigator Rice, 'Did you speak to this man,' she told him, 'At 9:00, when I came around to make my rounds, he was still breathing. He was still – I talked to him personally.'"[15] |
| Vice Lords | "[W]hat was told to me, was you're going to be secured all the way around the board because we've got Unit 4 on lock…That means that the guards were part of what they were part of, so them being the same thing they are, they've got to be – they've got to be with it. So I'd be secured all the way around the board."[16] |

---

[9] **Exhibit "A"** at 18:7-11
[10] **Exhibit "A"** at 23:19-21
[11] **Exhibit "A"** at 24:16-20
[12] **Exhibit "A"** at 25:2-3
[13] **Exhibit "A"** at 31:24-25.
[14] **Exhibit "A"** at 33:1-3
[15] **Exhibit "A"** at 54:6-10
[16] **Exhibit "A"** at 62-10-11.

49870417_1 -4-

## LEGAL STANDARD

"A motion *in limine* is a motion made prior to trial for the purpose of prohibiting opposing counsel from mentioning the existence of, alluding to, or offering evidence on matters so highly prejudicial to the moving party that a timely motion to strike or an instruction by the court to the jury to disregard the offending matter cannot overcome its prejudicial influence on the jurors' minds." *O'Rear* v. *Fruehauf Corp.*, 554 F.2d 1304, 1306 n.1 (5th Cir. 1977) (cites omitted). "The purpose of motions *in limine* is not to re-iterate matters which are set forth elsewhere in the Rules of Civil Procedure or Rules of Evidence, but, rather, to identify specific issues which are likely to arise at trial, and which, due to their complexity or potentially prejudicial nature, are best addressed in the context of a motion *in limine*." *Maggette* v. *BL Dev. Corp.*, Nos. 2:07-cv-181-M-A, 2:07-cv-182-M-A, 2011 U.S. Dist. LEXIS 58077, 2011 WL 2134578, *4 (N.D. Miss. May 27, 2011).

## ARGUMENT

**I.       The statements attributed to other gang members are inadmissible hearsay.**

Under the Federal Rules of Evidence, hearsay is defined as, "a statement that…(1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers into evidence to prove the truth of the matter asserted." F.R.E. 801(c). The Plaintiff is likely to elicit testimony from Brian Bullock about the threats made to him by other gang members. In the first example listed, Bullock testified about a "guy they wanted smashed," so he would logically have to have some basis for that knowledge. The basis would be the statement of an unidentified, convicted gang member. And the only potential relevance that statement would have in this case

would be if it were offered for its truth: *i.e.* that the gang members wanted Bullock to "smash" another gang member.

The Plaintiff might claim that these statements are not hearsay because they are not being offered for the truth, but only to show Bullock's state of mind or the effect it had on him. But in this § 1983 case, Bullock's state of mind or the effect a threat would have on him are not relevant facts. And even if Bullock's state of mind was relevant, the threats do not just reflect his state of mind; instead, they reflect his state of mind **and** the reason for that state of mind. *See United States* v. *Cohen*, 631 F.2d 1223, 1225 (5th Cir. 1980) ("But the state-of-mind exception does not permit the witness to relate any of the declarant's statements as to why he held the particular state of mind, or what he might have believed that would have induced the state of mind."); *Bedingfield* v. *Deen*, 487 Fed. Appx. 219, 228 (5th Cir. 2012) ("Thus, these statements do not fall under the Rule 803(3) exception because the statements do not simply demonstrate Trey's state of mind, but indicate why Trey held his particular state of mind.")

The Court will not ask the jury in this case to try Brian Bullock for the murder of McGrew; Bullock has already confessed to that murder and accepted a guilty plea. If this were a murder trial and Bullock were to argue as the theory of his case that he was under duress sufficient to vitiate the *mens rea* then his state of mind would be relevant. In this case, however, the only matters of consequence are whether or not MTC had notice that Bullock posed a mortal threat to McGrew. Bullock's subjective state of mind would neither prove nor disprove this notice. Thus, it is irrelevant, and the threats are hearsay. Hearsay statements from unnamed gang members – unavailable for cross-examination – are the prototypical examples of the unreliable evidence the common law – and now the Federal Rules of Evidence – seek to exclude from trial.

## II.     The "orders" to kill McGrew are also inadmissible hearsay.

The Plaintiff is likely to offer Bullock to testify at trial that an unidentified "Moody" or another inmate, Ernesto Sanchez, ordered Bullock to kill McGrew.  "Moody told me to kill McGrew or I would be killed."  Or something to that effect.  This, too, is inadmissible hearsay.  First, the order to kill was an out of court statement, and the only possible reason the Plaintiff would introduce it would be to show that Bullock was ordered to kill McGrew and would face danger himself if he failed to murder McGrew.  Again, this is not Bullock's criminal trial.  Whatever motive Bullock had for murdering McGrew has no bearing on the issues at controversy in this case.

## III.    Various other hearsay statements from Bullock.

In his deposition, Bullock made other hearsay statements which – if raised at trial – should be excluded.  Plaintiff's counsel questioned Bullock about MTC correctional officers and how they performed.  Bullock testified that he watched a correctional officer go into an inmate's cell and that unnamed inmate said, "If you don't want to get gunned down, you need to get out of my room."  This is unreliable, inadmissible hearsay and should be excluded.  Bullock also testified about conversations between a "psych nurse" and an MTC investigator concerning McGrew's death.  But by his admission, Bullock never heard the actual conversation; he just heard a paraphrased version of it from the MTC investigator.  This, too, should be excluded if Bullock attempts to use that information at trial.

## **CONCLUSION**

Much of Brian Bullock's deposition testimony consisted of inadmissible hearsay. The Court should enter an order preventing the Plaintiff from introducing testimony from Bullock about the threats made to him and the orders to kill McGrew. There is no relevant purpose for which this information would be admissible.

Dated: January 26, 2018.

        Respectfully submitted,

        **MANAGEMENT & TRAINING CORPORATION**

By:   s/H. Richard Davis, Jr.
      R. Jarrad Garner (MSB# 99584)
      H. Richard Davis, Jr. (MSB# 103983)
      Adams and Reese, LLP
      1018 Highland Colony Parkway, Suite 800
      Ridgeland, Mississippi 39157
      Office: (601) 353-3234
      Fax:   (601) 355-9708
      jarrad.garner@arlaw.com
      richard.davis@arlaw.com

## **CERTIFICATE OF SERVICE**

    I, H. Richard Davis, Jr., one of the attorneys for the Defendant, Management & Training Corporation, do hereby certify that I have, this day, filed the foregoing with the Clerk of Court using the CM/ECF system, which has caused a true and correct copy to be served on all counsel of record.

    Dated: January 26, 2018.

                                         s/H. Richard Davis, Jr.
                                         H. Richard Davis, Jr.